**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FRANKIE V. CONSULTING, INC.; FRANK VACCARO,

*Plaintiffs*,

v.

HUB RPW SOLUTIONS, LLC; HUB INTERNATIONAL LIMITED,

*Defendants*.

Civ. No.: 4:25-cv-40154-MRG

**ORDER ADOPTING REPORT & RECOMMENDATION**

**GUZMAN, J.**

Before the Court is Magistrate Judge David H. Hennessy's Report and Recommendation ("R&R") [ECF No. 27], recommending that Defendants' motion to dismiss [ECF No. 10] be **ALLOWED IN PART** and **DENIED IN PART**. Specifically, the R&R recommends dismissal of all claims against HUB International Limited ("HUB International"), dismissal of Count I (breach of fiduciary duty) against RPW Solutions, LLC ("RPW"), and denial of the motion as to Count II (negligence) and Count III (Mass. Gen. Laws ch. 93A, § 11) against RPW. Plaintiffs' partial objection [ECF No. 30] challenges only the dismissal of Count I against RPW. For the reasons below, the Court **OVERRULES** the objection and **ADOPTS** the R&R in full.

## I. BACKGROUND

The Court adopts the R&R's factual recitation, [R&R at 1–3], and summarizes only what bears on the objection. In 2016, Plaintiffs allege that Defendants recommended and helped Frankie

V. Consulting, Inc. ("Consulting") adopt an IRS-preapproved defined benefit plan for Vaccaro's single-employee consulting company. [Compl., ECF No. 1 ¶¶ 7, 11–12]. The Frankie V. Consultants, Inc. Defined Benefit Plan (the "Plan") was created. [Compl. ¶ 12]. RPW later prepared Consulting's annual Form 5500 filings. [Id. ¶¶ 20–22]. RPW allegedly did not ask whether Vaccaro held interests in other businesses. [Id. ¶¶ 19–22]. Because Vaccaro's wife owns Masis Staffing Solutions, Inc. ("Masis Staffing"), Vaccaro is deemed under 26 U.S.C. § 1563(e)(5) to own Masis Staffing as well, placing Consulting and Masis Staffing in a "controlled group" whose employees should have been covered by the Plan. [Id. ¶¶ 8–9, 15–16].

Plaintiffs allege that RPW never identified the controlled-group issue and represented through the Plan's annual filings that the Plan complied with applicable requirements. [Id. ¶¶ 20–22]. Consulting has since entered the IRS Voluntary Correction Program and anticipates a contribution obligation of at least $1,400,000 stemming from this issue. [Id. ¶¶ 27–28].

## II. LEGAL STANDARDS

A district judge reviews a magistrate judge's report and recommendation *de novo*. FED. R. CIV. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.

Because the underlying motion is one to dismiss under Rule 12(b)(6), the Court applies the familiar standard: it accepts all well-pleaded facts as true and draws every reasonable inference in the plaintiff's favor, Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007), while disregarding conclusory "labels and conclusions," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The Complaint must allege enough to state a claim "plausible on its face." Twombly, 550 U.S. at 570.

## III. DISCUSSION

The parties do not object to dismissal of all claims against HUB International, nor to the denial of dismissal as to Counts II and III against RPW. Reviewing these unobjected-to portions, the Court finds no clear error and **ADOPTS** them.

The Court now turns to the sole portion of the R&R to which Plaintiffs object: dismissal of Count I against RPW for failure to plausibly allege a fiduciary relationship. Having reviewed this portion *de novo*, the Court agrees with the R&R and **OVERRULES** the objection.

Plaintiffs maintain Count I sounds in Massachusetts common law, not ERISA, [ECF No. 16 at 2], and the R&R accepted that framing. [R&R at 6]. The Court does the same. Under Massachusetts law, a fiduciary duty arises either "as a matter of law, where parties . . . are cast in archetypal roles," or "as determined by the facts . . . indicating that one person is in fact dependent on another's judgment in business affairs or property matters." UBS Fin. Servs., Inc. v. Aliberti, 133 N.E. 3d 277, 288 (Mass. 2019) (citations omitted).

Plaintiffs invoke only the fact-based track, [ECF No. 16 at 4–6], which requires "faith, confidence, and trust . . . reposed by one party in another's judgment and advice," Aliberti, 133 N.E. 3d at 290, assessed through the "relation of the parties," "the plaintiff's business capacity contrasted with that of the defendant," "the readiness of the plaintiff to follow the defendant's guidance in complicated transactions wherein the defendant has specialized knowledge," and "the defendant's knowledge of the plaintiff's reliance." In re LastPass Data Sec. Incident Litig., 742 F. Supp. 3d 109, 128 (D. Mass. 2024) (quoting Broomfield v. Kosow, 212 N.E.2d 556, 560 (Mass. 1965)).

Critically, "the plaintiff alone, by reposing trust and confidence in the defendant, cannot thereby transform a business relationship into one which is fiduciary in nature." Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp., 44 F.3d 40, 44 (1st Cir. 1995) (quotation omitted).

The R&R's conclusion is reinforced by authority addressing the professional relationship at issue here: a plan sponsor's retention of an actuary or consultant to design and administer a retirement plan. In Geo. Knight & Co. v. Watson Wyatt & Co., 170 F.3d 210 (1st Cir. 1999), the First Circuit considered a decades-long relationship in which an actuarial consultant prepared annual actuarial valuation reports, ERISA and Internal Revenue Code filings, and proposed plan amendments. Id. at 212–13. Although the court recognized that an actuary may, in appropriate circumstances, owe fiduciary-type obligations, it found no such special circumstances on the record before it. Id. at 217. The client had not ceded control of the Plan's management or assets to the actuary, and the actuary did not exercise discretion over the client's business affairs. Id. at 216–17. The case therefore illustrates that specialized actuarial expertise and reliance on an actuary, without more, do not necessarily transform a professional-services relationship into a fiduciary one.

In re LastPass Data Sec. Incident Litigation likewise recognized that a disparity in knowledge, standing alone, does not establish a fiduciary relationship. 742 F. Supp. at 128. There, the plaintiffs alleged reliance on the defendant's cybersecurity expertise and assurances, but not reliance on the defendant's guidance or business judgment in conducting their affairs. Id. at 128–29 (quoting Watson Wyatt, 170 F.3d at 216; then citing, *inter alia*, Hawkes v. Lackey, 93 N.E. 828, 829 (1911)).

The Complaint alleges that Plaintiffs "reasonably relied on" RPW's expertise, [Compl. ¶ 29], and that RPW performed substantial technical work in connection with the Plan. [Id. ¶¶ 20–

22, 33]. The Court accepts that Plaintiffs allege reliance on RPW's specialized expertise and that RPW performed technical work in connection with the Plan. The difficulty is that those allegations describe a professional relationship, not necessarily a fiduciary one. What is missing are allegations showing that RPW assumed a position of discretionary authority over Plaintiffs' business or property, or that the parties' relationship was one in which RPW knowingly accepted the special trust and confidence that distinguishes a fiduciary relationship from an ordinary professional engagement.

The distinction matters. Massachusetts law does not treat a plaintiff's unilateral decision to trust a professional as sufficient to create a fiduciary relationship. See, e.g., Indus. Gen. Corp., 44 F.3d at 44; Watson Wyatt, 170 F.3d at 216. Nor does the Complaint allege facts showing that RPW assumed discretionary control over Plaintiffs' business or financial affairs. Instead, it alleges that RPW provided specialized professional services that Plaintiffs relied upon in making their own decisions. [See generally Compl.]

Plaintiffs devote most of their objection to distinguishing the cases the R&R relied upon. [ECF No. 30 at 8–12]. Those distinctions do not alter the Court's analysis. The Court takes each case in turn.

Winlake II, Inc. v. Mercier, No. MICV200500043C, 2006 WL 1360855 (Mass. Super. May 3, 2006), involved a landlord-tenant dispute between parties with adverse interests, and Plaintiffs correctly note the defendant there did not hold itself out as an expert on the matter at issue. But the R&R cited Winlake only for the broader, independent proposition that superior expertise plus reliance does not create a fiduciary relationship in an ordinary commercial transaction—a proposition that applies with equal force to a retained professional service provider. [See R&R at 7].

McIntyre v. Okurowski, 717 F. Supp. 10 (D. Mass. 1989), is on point. There, the plaintiff alleged that she had limited investment knowledge and that she relied on the defendant's investment advice in managing her account. Id. at 11. The court held that "allegations of minimal investment knowledge and blind reliance on investment advice 'fall short of indicating a fiduciary (as distinguished from a business) relationship.'" Id. (quoting Vogelaar v. H.L. Robbins & Co., 204 N.E.2d 461, 462 (Mass. 1965)). Plaintiffs attempt to distinguish McIntyre on the ground that RPW did not merely give "advice" but "perform[ed] the technical work" of preparing the Plan's filings. [ECF No. 30 at 10]. That distinction does not alter the analysis. As explained above, Watson Wyatt rejected the same argument. An actuary's performance of technical work—valuations, filings, proposed amendments—does not create fiduciary obligations absent control over the client's decisions or the plan's assets. Watson Wyatt, 170 F.3d at 216. RPW's preparation of Form 5500 filings and Schedule SB certifications is technical professional work of a materially similar kind. McIntyre is therefore instructive here.

Vogelaar fares no better. There, the Supreme Judicial Court held that the plaintiff's allegations were insufficient to distinguish an ordinary commercial relationship from a fiduciary one. 204 N.E.2d at 462. Plaintiffs argue their Complaint pleads more "specific facts" than Vogelaar's, [ECF No. 30 at 11], but the facts they identify—RPW's expertise, Plaintiffs' engagement of RPW, and Plaintiffs' reliance on RPW's advice—are the same category of facts Vogelaar found insufficient. They differ from Vogelaar's in degree, not in kind, and Plaintiffs identify nothing that changes the character of the relationship rather than merely its detail.

Aliberti likewise does not assist Plaintiffs. Plaintiffs argue Aliberti turned on the defendant's possession of the plaintiff's IRA assets and resulting leverage, and that no comparable dynamic is alleged here. [ECF No. 30 at 11–12]. But Aliberti held that even though the plaintiff

"had to rely on [the defendant]'s cooperation" and even though "there was a disparity in the parties' positions due to [the defendant] having possession of the . . . assets and unilaterally dictating the terms" of access, "this particular brand of power imbalance is not uncommon in . . . our modern consumer marketplace and does not, in and of itself, create a fiduciary duty." 133 N.E. 3d at 290. That rationale—reliance and power imbalance, without more, do not suffice—is the same rationale Watson Wyatt and LastPass applied to professional-services engagements with no asset-custody component at all, and the Court declines to read Aliberti as narrowly as Plaintiffs propose.

Baker v. Wilmer Cutler Pickering Hale & Dorr LLP, 81 N.E.3d 782 (Mass. App. Ct. 2017), is materially different and does not alter the R&R's conclusion. It involved allegations that attorneys secretly assisted majority members of a closely held LLC in eliminating protections afforded to minority members. Id. at 791–94. The case therefore involved alleged conduct substantially different from the professional service relationship pleaded here.

Finally, Collins v. Huculak, 783 N.E.2d 834 (Mass. App. Ct. 2003), was decided after a three-day bench trial on a developed record, not on a motion to dismiss, id. at 836–37, so its observation that fiduciary status is largely a question of fact, id., describes how the issue is ultimately resolved rather than exempting a complaint from a plausibility assessment. And its holding cuts against Plaintiffs regardless. The court found no fiduciary relationship between a father and his adult sons because, although "the plaintiffs no doubt trusted their father," they "were not dependent upon him in business or property matters." Id. at 841 (quotation omitted). That is the type of dependency the Complaint fails to allege here.

Plaintiffs' objection recasts the same allegations addressed by the R&R—*e.g.*, that RPW held itself out as an expert, served as the Plan's "creator, actuary and administrator," [Compl. ¶ 33], and that Plaintiffs relied on that expertise, [id. ¶¶ 21, 29]—in more forceful language, but

identifies no allegation the R&R overlooked. On *de novo* review, the Court is bound by the well-pleaded facts, not by characterizations placed on them in briefing. Iqbal, 556 U.S. at 678. Nor does the general proposition that fiduciary-relationship determinations can be fact-intensive excuse Plaintiffs from pleading facts that, if true, would plausibly establish the relationship in the first instance.

Therefore, Plaintiffs' objection is **OVERRULED**, and the R&R's recommendation that Count I be dismissed as against RPW is **ADOPTED**. Accordingly, Defendants' motion to dismiss [ECF No. 10] is **ALLOWED IN PART** and **DENIED IN PART**. All claims against HUB International Limited and Count I against RPW are dismissed. Counts II and III against RPW remain pending.

**SO ORDERED.**

Dated: September 30, 2026

/s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge